Koorosh K. Shahrokh, Esq. (Bar No. 224335)
**NATIONAL CHOICE LAWYERS**
19727 Ventura Blvd., Suite B
Woodland Hills, CA 91346
Telephone: 818-996-7301
Facsimile:  818-996-7302
E-Mail: Mr.K@NationalChoiceLawyers.com

ATTORNEY FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA PAUL PARJAN, an individual,<br><br>                                     Plaintiff,<br><br>vs.<br><br>KONINKLIJKE PHILIPS N.V., a business entity, form unknown,<br>PHILIPS NORTH AMERICA LLC, a business entity, form unknown,<br>PHILIPS HOLDING USA, INC., a business entity, form unknown,<br>PHILIPS RS NORTH AMERICA LLC, a business entity, form unknown,<br>and DOES 1 to 100, inclusive,<br><br>                                     Defendants. | Case No.: 2:22-cv-6318<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>  1. **BREACH OF EXPRESS WARRANTY**<br>  2. **BREACH OF IMPLIED WARRANTIES**<br>  3. **FRAUDULENT MISREPRESENTATION**<br>  4. **FRAUD BY OMISSION**<br>  5. **NEGLIGENT MISREPRESENTATION**<br>  6. **FAILURE TO WARN**<br>  7. **STRICT PRODUCT LIABILITY**<br>  8. **UNJUST ENRICHMENT**<br><br>        **DEMAND FOR JURY TRIAL** |

Comes now Plaintiff ANITA PAUL PARJAN (hereinafter "Plaintiff") and alleges, avers, and claims against Defendants KONINKLIJKE PHILIPS N.V., a business entity, for unknown, PHILIPS NORTH AMERICA LLC, a business entity, form unknown, PHILIPS HOLDING USA, INC., a business entity form unknown, PHILIPS RS NORTH AMERICA LLC and DOES 1 to 100, inclusive (hereinafter "Defendants") and each of them, as follows:

# I.

# PARTIES & JURISDICTION

1. Plaintiff is an individual over the age of eighteen (18) and is now and/or at all times mentioned in this Complaint a resident of the State of California.

2. Plaintiff is informed and believes and thereby alleges that Defendant KONINKLIJKE PHILIPS N.V. ("Defendant Royal Philips") is a multi-national corporation, form unknown, with its principal place of business in Amsterdam, Netherlands.

3. Plaintiff is informed and believes and thereby alleges that Defendant PHILIPS NORTH AMERICA LLC ("Defendant Philips NA") is a business entity, form unknown, incorporated in the State of Delaware, with a principal place of business located at 222 Jacobs Street, 3rd Floor, Cambridge, MA, 02141.

4. Plaintiff is informed and believes and thereby alleges that Defendant PHILIPS HOLDING USA, INC. ("Defendant Philips USA") is a business entity, form unknown, incorporated in the State of Delaware, with a principal place of business located at 222 Jacobs Street, 3rd Floor, Cambridge, MA, 02141.

5. Plaintiff is informed and believes and thereby alleges that Defendant PHILIPS RS NORTH AMERICA LLC ("Defendant Philips RS") is a business entity, form unknown, incorporated in the State of Delaware, with a principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania, 15206.

6. Defendant Philips RS was formerly operated under the business name of "Respironics, Inc."; was acquired by Defendant Royal Philips in 2008.

7. Defendant Royal Philips is the parent company of the Philips group of healthcare technology businesses, including businesses focusing on sleep and respiratory care.

8. Defendant Royal Philips directly or indirectly hold 100% of its subsidiaries, Defendants Philips NA, Philips USA and Philips RS.

9. Upon information and belief, Plaintiff contends Defendant Royal Philips controls Defendants Philips NA, Philips USA and Philips RS in the manufacturing, selling, distributing and supplying of the recalled CPAP and Bi-level PAP machines.

10. Defendants Royal Philips, Philips NA, Philips USA, and Philips RS shall collectively be referred to as "Philips".

11. The true names and capacities of the defendants named herein as does 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff who therefore sues such defendants by fictitious names pursuant to *California Code of Civil Procedure* ("CCP") §474.

12. Plaintiff is informed and believes that doe defendants are California residents and/or do business in California, or are residents or do business in the United States of America.

13. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined.

14. Defendants, and each of them, are now, and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

15. Defendants proximately caused Plaintiff to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

16. Defendants, and each of them, at all times mentioned in this Complaint aided and abetted the acts and omissions of each and every one of the other defendants thereby proximately causing the damages alleged in this Complaint.

17. The damages alleged in this Complaint are within the jurisdiction of this Court.

18. This Court is the proper venue because the events and occurrences alleged in this Complaint occurred within the jurisdiction of this Court.

19. Plaintiff is informed and believes that each defendant, and doe defendants, reside, do business, or have sufficient minimum contacts in the State of California to justify personal jurisdiction over said defendants.

## II.

## GENERAL ALLEGATIONS

## COMMON TO ALL CAUSES OF ACTION

20. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

21. Plaintiff brings this action as a purchaser and user of a Continuous Positive Airway Pressure (CPAP) device manufactured by Philips, which contain polyester-based polyurethane sound abatement foam ("PE-PUR Foam").

22. In 2014, Plaintiff purchased a Philips Respironics Remstar Auto A-Flex CPAP device that she used nightly from 2014 until March 9, 2020 when she was diagnosed with leukemia.

23. During the time she used the CPAP machine, Plaintiff complained about pressure in her chest, headaches and nausea. She continues to suffer from headaches to the present day.

24. On April 26, 2021, Philips made a public announcement disclosing it had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level PAP, and mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances.

25. On June 14, 2021, Royal Philips issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator devices containing PE-PUR Foam (the "Recalled Device"), because Philips had determined that (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation (the "Recall Notice").

26. Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: Toluene Diamine ("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").

27. The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include: skin, eye, nose, and respiratory tract irritation, headache, dizziness, hypersensitivity, nausea, vomiting, and toxic and carcinogenic effects.

28. Philips has disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun.

29. The Philips Recalled Device include the REMStar SE CPAP devices purchased by Plaintiff.

30. Philips further disclosed in its Recall Notice that these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment.

NATIONAL CHOICE LAWYERS
19727 Ventura Blvd., Suite B, Woodland Hills, California 91346
818-996-7301 – Telephone   Facsimile – 818-996-7302

31. According to Philips, the PE-PUR Foam used in the Recalled Devices put users at risk of suffering from skin, eye and respiratory tract irritation, inflammatory response, headache, asthma, adverse effects to other organs such as the liver and kidneys, and toxic carcinogenic effects.

32. Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."

33. Further, Philips reported that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening, or cause permanent impairment, or require medical intervention to preclude permanent impairment."

34. Prior to issuing the Recall Notice, Philips received complaints regarding the presence of black debris/particles within the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask).

35. Philips also received reports of headaches, upper airway irritation, cough, chest pressure and sinus infection from users of these devices.

36. Philips recommended that patients using the recalled CPAP and Bi-Level PAP devices immediately discontinue using their devices and that patients using the recalled ventilators for life-sustaining therapy consult with their physicians regarding alternative ventilator options.

**37.** On July 2021, Plaintiff received a notification from Philips advising her that her Philips' Respironics Remstar SE device was subject to a recall due to the presence of a dangerous PE-PUR Foam that could cause her to suffer from adverse health effects, including, inter alia, cancer and organ failure.

38. Plaintiff was advised to discontinue use of the devices.

39. She was also advised to verify whether her device was subject to the recall by submitting the serial numbers for her device to an online database Philips established.

40. Plaintiff received confirmation that her CPAP device was subject to recall.

41. At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Device that the PE-PUR Foam contained therein may offgas or degrade upon

use. Similarly, prior to the Update, Philips did not disclose any health risks associated with use of the Recalled Device.

42. Philips has not disclosed when it first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

43. At a minimum, as a result of user reports, Philips was aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Device at some point prior to the recall yet continued to manufacture and sell the Recalled Device with such awareness.

44. During this period, Philips unreasonably and unjustly profited from the manufacture and sale of the Recalled Device and unreasonably put users of the Recalled Device at risk of development of serious adverse health effects, including organ failure and cancer.

45. The information described above, including the now-known health risks of Philips CPAP devices, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep apnea and respiratory conditions.

46. Individuals must immediately discontinue their use of the Recalled Device or face serious health risks as grave as organ failure or cancer.

47. If they choose to discontinue use of the Recalled Device they must pay for another expensive device in order to receive effective treatment for their respiratory conditions.

48. As a result of the health risks associated with the use of the Recalled Device, together with Philips' concealment of these risks from the date they were first reported to Philips or discovered by Philips through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

49. The manuals accompanying Plaintiff's Respironics RemStar SE CPAP device did not contain any language or warnings of health risks associated with use of the device, including skin, eye, nose, and respiratory tract irritation, inflammatory response, headache, asthma, adverse effects to other organs such as the kidneys and liver, and toxic carcinogenic effects.

50. Had Philips informed Plaintiff of these risks, she would not have purchased or used the Recalled Device.

51. Without knowing of the health risks associated with use of the Recalled Device, Plaintiff used her Recalled Device regularly to treat her respiratory condition until she was diagnosed with leukemia in March 2020 and thereafter learning on or about July 2021 that the device was recalled.
52. As a result of the health risks associated with continued use of these devices and the recall, Plaintiff's Respironics Remstar SE CPAP device is now worthless.
53. Plaintiff has now incurred, or will incur, substantial expenses to replace the devices.
54. In addition, Plaintiff has experienced pressure in her chest, headaches and nausea. She continues to suffer from headaches to the present day during, and as a result of, his use of Philips' CPAP machines.
55. Plaintiff has also been diagnosed with Leukemia in March 2020.
56. Since being notified of the recall, Plaintiff has experienced anxiety concerning the potential serious health risks she is facing from possible exposure to off-gassed or degraded PE-PUR Foam in the recalled devices.
57. Plaintiff seeks to recover damages based on, *inter alia*, Philips' breach of express warranty, breach of implied warranties, misrepresentations, omissions, product liability and unjust enrichment in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam.
58. In addition, Plaintiff seeks medical monitoring damages for her use of the Philips' device identified in this Complaint, since she is at risk of suffering from serious injury as a result of her use of the Philips' device, including skin, nose, eye, and respiratory tract irritation, inflammatory response, headache, asthma, adverse effects to other organs, such as the kidneys and liver, and toxic carcinogenic effects.
59. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

///

///

///

///

### III.
### CAUSES OF ACTION

# FIRST CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

60. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

61. Philips marketed and sold the Recalled Device into the stream of commerce with the intent that the Recalled Device would be purchased by the public, including Plaintiff.

62. Philips expressly warranted, advertised, and represented to Plaintiff that the Recalled Device was safe and appropriate for human use.

63. Philips made these express warranties regarding the Recalled Device's quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the Recalled Device's packaging and labels.

64. These express warranties became part of the basis of the bargain that Plaintiff entered into upon purchasing the Recalled Device.

65. Philips' advertisements, warranties, representations, and omissions regarding health risks associated with the Recalled Device, was made in connection with the sale of the Recalled Device to Plaintiff.

66. Plaintiff relied on Philips' advertisements, warranties, representations, and omissions regarding the Recalled Device in deciding whether to purchase and use Philips' Recalled Device.

67. Philips' Recalled Device does not conform to Philips' advertisements, warranties, representations, and omissions in that it is not safe, healthy, and appropriate for human use, and pose risks of serious injury and disease, including organ failure and cancer.

68. Philips therefore breached its express warranties by placing Recalled Device into the stream of commerce and selling them to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips.

///

69. These associated health effects substantially impair the use, value, safety of the Recalled Device, and render it worthless.

70. Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Device, but nowhere on the package labeling or package inserts or on Philips' websites or other marketing materials did Philips warn Plaintiff that he was at risk of developing adverse health effects as a result of the dangerous PE-PUR Foam used in the Recalled Device.

71. Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Device and deceptively represented that these products were safe, healthy, and appropriate for use.

72. Philips thus utterly failed to ensure that the material representations they were making to consumers were true.

73. The adverse health effects associated with use of the Recalled Device existed when it left Philips' possession or control and was sold to Plaintiff.

74. The dangers associated with use of the Recalled Device were undiscoverable by Plaintiff at the time of purchase of the Recalled Device.

75. As manufacturers, marketers, advertisers, distributors and sellers of the Recalled Device, Philips had exclusive knowledge and notice of the fact that the Recalled Device did not conform to the affirmations of fact and promises.

76. In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations and omissions to induce Plaintiff to rely on such representations and omissions.

77. Philips' affirmations of fact and promises and its omissions were material, and Plaintiff reasonably relied upon such representations and omissions in purchasing and using the Recalled Device.

78. All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiff.

79. Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile.

80. Philips was placed on reasonable notice from user reports and its lab testing that the PE-PUR Foam in the Recalled Device was unsafe.

81. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Device to make them safe and healthy for use by Plaintiff but failed to do so until now.

82. As a direct and proximate result of Philips' breaches of express warranty, Plaintiff has been damaged because she did not receive the product as specifically warranted by Philips.

83. Plaintiff did not receive the benefit of the bargain and suffered damages at the point of sale stemming from her overpayment for the Recalled Device.

84. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

85. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

86. Philips are merchants engaging in the sale of goods to the public, including Plaintiff.

87. There was a sale of goods from Philips to Plaintiff.

88. At all times mentioned herein, Philips manufactured or supplied the Recalled Device, and prior to the time the Recalled Device was purchased by Plaintiff, Philips impliedly warranted to her that the Recalled Device was of merchantable quality, fit for its ordinary use, and conformed to the promises and affirmations of fact and omissions made on the Recalled Device's labels and packaging, including that the Recalled Device was safe and appropriate for human use.

89. Plaintiff relied on Philips' promises and affirmations of fact and omissions when she purchased and used the Recalled Device.

90. Contrary to these representations and warranties, the Recalled Device was not fit for its ordinary use and did not conform to Philips' affirmations of fact and promises and omissions because use of the Recalled Device is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of this device.

91. Philips breached its implied warranties by selling Recalled Device that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each Recalled Device was

accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

92. Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Device through user reports submitted to Philips and through lab testing.

93. Privity exists because Philips impliedly warranted to Plaintiff through the warranting, packaging, advertising, marketing, and labeling that the Recalled Device was natural, and suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of the Recalled Device.

94. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## THIRD CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

95. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

96. Philips failed to advise Plaintiff that the Recalled Device posed serious health risks to their users and Philips falsely represented to Plaintiff that the Recalled Device weas safe for human use.

97. Philips intentionally, knowingly, and recklessly made these misrepresentations and omissions to induce Plaintiff to purchase the Recalled Device.

98. Philips knew that its representations and omissions about the Recalled Device was false in that the Recalled Device contained PE-PUR Foam and thus were at risk of causing adverse health effects to users of the Recalled Device, which does not conform to the products' labels, packaging, advertising, and statements.

99. Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff.

100. Plaintiff did in fact rely on these omissions and misrepresentations and purchased and used the Recalled Device to her detriment.

///

///

101. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Device, Plaintiff's reliance on Philips' omissions and misrepresentations was justifiable.

102. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## FOURTH CAUSE OF ACTION
## FRAUD BY OMISSION

103. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

104. Philips concealed from and failed to disclose to Plaintiff that use of Recalled Device is accompanied by a risk of adverse health effects, which does not conform to the products' labels, packaging, advertising, and statements.

105. Philips was under a duty to disclose to Plaintiff the true quality, characteristics, ingredients and suitability of the Recalled Device because: (a) Philips was in a superior position to know the true state of facts about its products; (b) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of the Recalled Device for use by individuals; and (c) Philips knew that Plaintiff could not reasonably have been expected to learn or discover prior to purchasing the Recalled Device that there were misrepresentations and omissions by Philips in the packaging, labels, advertising, and websites regarding the health risks associated with use of this device.

106. The facts concealed or not disclosed by Philips to Plaintiff were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Recalled Device.

107. Plaintiff justifiably relied on Philips' omissions to her detriment.

108. The detriment is evident from the true quality, characteristics, and risk associated with the use of the Recalled Device, which is inferior when compared to how the Recalled Device is advertised and represented by Philips.

///

109. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

110. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

111. Philips had a duty to Plaintiff to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the Recalled Device.

112. Philips breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Device from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Device.

113. Philips knew or should have known that the qualities and characteristics of the Recalled Device was not as advertised or suitable for its intended use and was otherwise not as warranted and represented by Philips. Specifically, Philips knew or should have known that: (a) the use of the Recalled Device was accompanied by risk of adverse health effects that do not conform to the packaging and labeling; (b) the Recalled Device was adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (c) the Recalled Device was otherwise not as warranted and represented by Philips.

114. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## SIXTH CAUSE OF ACTION
## FAILURE TO WARN

115. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

116. Philips was under a duty to disclose to Plaintiff the true quality, characteristics, ingredients and suitability of the Recalled Device because: (a) Philips was in a superior position to know the true

state of facts about its products; (b) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of the Recalled Device for use by individuals; and (c) Philips knew that Plaintiff could not reasonably have been expected to learn or discover prior to purchasing the Recalled Device that there were misrepresentations and omissions by Philips in the packaging, labels, advertising, and websites regarding the health risks associated with use of this device.

117. Philips failed to warn Plaintiff that the Recalled Device posed serious health risks to their users and Philips falsely represented to Plaintiff that the Recalled Device was safe for human use.

118. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## SEVENTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY

119. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this pleading as if fully set forth herein.

120. At all times mentioned in this complaint, Philips negligently and carelessly designed, manufactured, constructed, assembled, inspected, distributed and/or sold the Recalled Device, such that it was dangerous and unsafe for its intended uses.

121. At all times mentioned in this Complaint, Philips negligently and carelessly failed to warn, or adequately warn, consumers about the dangers of the Recalled Device, including Plaintiff.

122. In the alternative, at all times mentioned in this Complaint, Philips negligently and carelessly designed, manufactured, constructed, assembled, inspected, distributed and/or sold the Recalled Device, such that it was dangerous and unsafe for its intended uses.

123. At all times mentioned in this Complaint, Philips negligently and carelessly failed to warn, or adequately warn, consumers about the dangers of the Recalled Device, including Plaintiff.

124. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

///

///

## EIGHTH CAUSE OF ACTION

## UNJUST ENRICHMENT

125. Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

126. Plaintiff conferred substantial benefits on Philips through the purchase of the Recalled Device. Philips knowingly and willingly accepted and enjoyed these benefits.

127. Philips either knew or should have known that the payments rendered by Plaintiff were given with the expectation that the Recalled Device would have the qualities, characteristics, and suitability for use represented and warranted by Philips.

128. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

129. Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiff.

130. Plaintiff is entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

131. As a direct and proximate result of Philips' conduct, Plaintiff has suffered injury, damage and loss.

## IV.

## DAMAGES

132. As a direct and proximate result of the wrongful conduct of Philips, Plaintiff sustained severe and serious injury to her person, all to Plaintiff's damage in a sum within the jurisdiction of this court and to be shown according to proof.

133. By reason of the foregoing, Plaintiff has been required to employ the services of hospitals, physicians, surgeons, nurses and other professional services, and Plaintiff has been compelled to incur expenses for medications and other medical supplies and services. Plaintiff is informed and thereon alleges that further services of a similar nature will be required in an amount to be shown according to proof.

///

134. At the time of the injury, as aforesaid, Plaintiff was regularly and gainfully employed or able to be employed. By reason of the foregoing, Plaintiff has been unable to engage in employment for a time subsequent to said incident, and Plaintiff is informed and believes, and upon such information and belief, alleges that she will be unable to work for an indefinite period in the future, all to Plaintiff's damage in an amount to be shown according to proof.

135. As a direct and proximate result of Philips' conduct, Plaintiff has suffered actual damages in that she purchased the Recalled Device (a) that was worth less than the price she paid, (b) which she would not have purchased at all had she known it contained PE-PUR Foam that could cause users of the Recalled Device to suffer adverse health effects, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

136. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

137. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

138. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available.

## V.
## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

## VI.
## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, for:

a. General Damages for $1,000,000.00 for breach of express warranty or in the sum according to proof;

b. General Damages for $1,000,000.00 for breach of implied warranties or in the sum according to proof;

c. General Damages for $1,000,000.00 for fraudulent misrepresentation or in the sum according to proof;

d. General Damages for $1,000,000.00 for fraud by omission or in the sum according to proof;

e. General Damages for $1,000,000.00 for negligent misrepresentation or in the sum according to proof;

f. General Damages for $1,000,000.00 for failure to warn or in the sum according to proof;

g. General Damages for $1,000,000.00 for strict product liability or in the sum according to proof;

h. General Damages for $1,000,000.00 for unjust enrichment or in the sum according to proof;

i. Special Damages incurred and to be incurred for services of hospitals, physicians, surgeons, nurses and other medical supplies and services in a sum according to proof at trial;

j. Damages for permanent or temporary disability;

k. Damages for emotional distress;

l. Damages for future medical monitoring for Plaintiff;

m. Damages for loss of earnings, both past and prospective, in an amount to be proven at trial;

n. Damages for loss of capacity to earn income in an amount to be proven at trial;

o. Damages for loss of homemaking services in an amount to be proven at trial;

p. For the interest provided by law including, but not limited to, *California Civil Code* § 3291; and

q. Costs of suit and for such other and further relief as the court deems proper.

Dated: September 6, 2022

**NATIONAL CHOICE LAWYERS**

_____

Koorosh K. Shahrokh, Esq.
Attorney for Plaintiff